IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CAROL B., | ) | Case No. |
| | ) | |
| Plaintiff, | ) | Hon. |
| v. | ) | |
| | ) | |
| WAUBONSEE COMMUNITY | ) | |
| COLLEGE, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Carol B., by and through her attorneys assert there is no other civil action pending in this Honorable Court or any other Court arising out of the same transaction and occurrence

## JURY DEMAND

COMES NOW Plaintiff Carol B. and hereby demands trial by jury. As for her Complaint against Defendant, Plaintiff, Carol B., states that:

## PARTIES AND JURISDICTION

1.      Plaintiff Carol B. was a resident of Illinois and resided in Illinois during all times relevant to this Complaint.

2.      Defendant Waubonsee Community College is a public community college with three campuses in Illinois: Sugar Grove, Aurora and Plano.

3.      Venue is proper in this Court, because the violations Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq. giving rise to Plaintiff's claims occurred in this district.

1

4.     This action is brought in this Court on the basis of federal question jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq.

5.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

## **FACTUAL ALLEGATIONS**

6.     Plaintiff is an African-American woman who was employed by the Defendant as a testing services manager.

7.     Plaintiff's employment began on or about July 29, 2019.

8.     In that role, Plaintiff supervised and evaluated approximately 13 employees.

9.     When Plaintiff first began in this position, her department was under the Student Services Division with her direct supervisor being the Assistant Vice President of Student Services, Dr. Scott Peska.

10.     Upon information and belief, the final performance review conducted by Dr. Scott Peska rated the Plaintiff as a Valuable Contributor.

11.     During the course of Plaintiff's employment with Defendant, the COVID-19 Pandemic occurred in 2020, which caused the widespread utilization of remote work.

12.     Further, childcare became difficult to procure due to the shutdowns related to the pandemic.

13.     Plaintiff began remote work in March of 2020 until July 4, 2020, when Defendant attempted to institute a hybrid work model.

14.     Upon information and belief, COVID-19 infections began to drastically increase in November of 2020, causing Defendant to once again start fully remote work until the end of December 2020.

15.     Remote work actually enabled Plaintiff to more effectively do her job, as she had oversight responsibilities at multiple campuses of Defendant, and she was able to "virtually" meet with them more regularly since she did not have to appear in-person at just her single office location.

16.     Beginning in January of 2021, Defendant again attempted a hybrid work model.

17.     Issues arose as Plaintiff struggled to find appropriate childcare due to the issues caused by the ongoing pandemic.

18.     During her employment, Plaintiff's department was shifted to the Academic Support Division, with her new supervisor being the Executive Dean for Academic Support, Dr. Anita Moore-Bohannon.

19.     As a result of the aforementioned issues, Plaintiff could not appear in person, as there would be no appropriate care for her child, who was under the age of 1 at the time.

20.     Plaintiff repeatedly sought help from Defendant on issues of the need for additional staffing as well as temporary accommodation to work remotely.

21.     Plaintiff repeatedly asked for this accommodation to allow her to secure adequate childcare after exhausting all of her options, including EAP.

22.     Defendant's HR department recommended seeking assistance from EAP, which did not resolve Plaintiff's childcare issues.

23.     After requesting said temporary accommodation, Plaintiff had all flexibility removed from her schedule.

24.     Emails confirm that Plaintiff's request for remote work accommodation was never pursued as a permanent option.

25.     Upon information and belief, Rachel Vaughn, a white employee of Defendant, was allowed an accommodation which Plaintiff was not.

26.     After Plaintiff's repeated requests for accommodation, Defendant began to retaliate and otherwise proceed in bad faith with the following actions:

   a. Encouraging staff under Plaintiff's supervision to talk ill of her; several of these testing staff employees expressed they were

4

uncomfortable with the nature of their conversations with Moore-Bohannon;

b. Informing Plaintiff of a grievance the day before her departure on FMLA parental leave, when it was later discovered that the issue was minor and not one for which others have been grieved, and Plaintiff was not given an opportunity to respond to the allegation;

c. Blaming Plaintiff for not checking with Moore-Bohannon regarding the approval of PTO, when an email from the Spring of 2021 shows Moore-Bohannon did not wish to receive these requests;

d. Overtly and excessively criticizing Plaintiff's work, despite over a decade of exceptional service and an utter lack of issues with Testing;

e. Denying Plaintiff's reasonable requests for additional testing staff to comply with test vendors and NCTA guidelines;

f. Removing schedule flexibility in response to Plaintiff's request for accommodations, despite the very real new wave of COIVD infections;

g. Denying Plaintiff remote work to allow her to care for her unvaccinated newborn child, when appropriate care was not available, making this accommodation a necessity rather than a convenience;

h.  Refusing any accommodation for Plaintiff after Plaintiff pursued all options provided by Defendant and/or Defendant's employees, agents, departments, and the like;

i.  Offering accommodation to a white employee who raised childcare concerns despite that employees poor performance and physical presence requirements; and

j.  Eventually forcing Plaintiff out of her job;

27.  Plaintiff was terminated by Defendant due to her need for accommodation that Defendant was able to provide and provided to another employee who was white.

28.  Defendant's assertions about its accommodation policy discriminated against Plaintiff as a young mother.

## COUNT I
## RETALIATION AND DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e *et seq*. ("Title VII")

29.  Plaintiff Carol B. incorporates by reference all allegations in the preceding paragraphs.

30.  At all material times, Defendant Waubonsee Community College, Inc. was an employer within the meaning of Title VII, as amended.

31.  At all material times, Plaintiff was an employee within the meaning of Title VII, as amended.

6

32.    At all material times, Plaintiff identified as an African-American/Black woman. As a result, Ms. B. is a member of a protected class pursuant to Title VII.

33.    Title VII of the Civil Rights Act of 1964 makes it unlawful to harass or discriminate against an employee on the basis of that employee's race.

34.    Defendant's conduct, as alleged herein, violated Title VII. Defendant's firing practices had a discriminatory impact upon African-American/Black employees.

35.    Plaintiff alleges Defendant fired African-American/Black employees at a disproportionately higher rate than other races.

36.    Defendant treated Ms. B.'s Caucasian contemporary employees better than her.

37.    Namely, Defendant did force similarly situated Caucasian employees out of their positions for the same reasons it did so to Ms. B..

38.    Further, Defendant did not offer the same accommodation to Ms. B. that were being offered to her Caucasian counterparts.

39.    Plaintiff was subjected to offensive communication, bullying and/or other conduct on the basis of her race.

40.    Defendant and its agents' unlawful actions were intentional, willful, malicious and done with reckless disregard for Plaintiff's rights.

41.     As a proximate cause of Defendant's discriminatory actions, Plaintiff B. suffered past wage loss, future wage loss and earning capacity.

42.     As a proximate cause of Defendant's discriminatory actions, Plaintiff B. physical health suffered.

43.     As a proximate cause of Defendant's discriminatory actions, Plaintiff B. suffered humiliation, anxiety, mental anguish, and emotional distress.

44.     As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

45.     Plaintiff B. requests the relief as described in the Prayer for Relief below.

<u>**COUNT II**</u>
**HARASSMENT AND DISCRIMINATION ON THE BASIS OF SEX/GENDER IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e *et seq*. ("Title VII")**

46.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

47.     At all material times, Plaintiff was Defendant's employee.

48.     Plaintiff identifies as a woman. Defendant was aware of the same. As such, Plaintiff was a member of a protected class.

49.     A respondeat superior relationship existed because Plaintiff's supervisors had the ability to undertake or recommend tangible decisions affecting

all Plaintiffs and the authority to direct all of the Plaintiffs daily work activity, as alleged in the statement of facts.

50. Defendant's conduct, as alleged herein, violated the Title VII, which makes it unlawful to harass or discriminate against an employee because of their sex or gender.

51. Plaintiff was subjected to communication and/or conduct on the basis of her status as alleged in the facts of this Complaint, including for being a mother.

52. The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

53. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

54. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

55. Plaintiff requests relief as described in the Prayer for Relief below.

## <u>COUNT III</u>
### HARASSMENT AND DISCRIMINATION ON THE BASIS OF SEX/GENDER IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e *et seq*. ("Title VII")

56. Plaintiff incorporates by reference all allegations in the preceding

paragraphs.

57.     At all material times, Plaintiff was Defendant's employee.

58.     Plaintiff identifies as a woman. Defendant was aware of the same. As such, Plaintiff was a member of a protected class.

59.     A respondeat superior relationship existed because Plaintiff's supervisors had the ability to undertake or recommend tangible decisions affecting all Plaintiffs and the authority to direct all of the Plaintiffs daily work activity, as alleged in the statement of facts.

60.     Defendant's conduct, as alleged herein, violated the Title VII, which makes it unlawful to harass or discriminate against an employee because of their sex or gender.

61.     Plaintiff was subjected to communication and/or conduct on the basis of her status as alleged in the facts of this Complaint.

62.     The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

63.     As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

64.     As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

65.     Plaintiff requests relief as described in the Prayer for Relief below.

**COUNT IV**
**RETALIATION IN VIOLATION OF TITLE VII**

66.     Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

67.     At all material times, Plaintiff was an employee and Defendant was an employer covered by, and within the meaning of Title VII.

68.     Defendant's conduct, as alleged in this Complaint, violated Title VII, which makes it unlawful to retaliate against an employee for engaging in protected activity.

69.     A respondeat superior relationship existed because Defendant's managers and supervisors had the ability to undertake or recommend tangible decisions affecting Plaintiff or the authority to direct Plaintiff's daily work activity as alleged in the statement of facts.

70.     Plaintiff engaged in protected activity by requesting accommodation that was being offered to other employees as well as other activities to be uncovered during the course of discovery.

71.     After Plaintiff engaged in protected activity, Defendant's agents thereafter took several adverse employment actions against Plaintiff because of

that activity as alleged in the statement of facts, subjecting Plaintiff to retaliation for requesting a reasonable accommodation including, but not limited to:

    a. Encouraging staff under Plaintiff's supervision to talk ill of her; several of these testing staff employees expressed they were uncomfortable with the nature of their conversations with Bohannon;

    b. Informing Plaintiff of a grievance the day before her departure on FMLA parental leave when it was later discovered this issue was relatively minor; Plaintiff was not given an opportunity to respond to the allegation;

    c. Blaming Plaintiff for not checking with Bohannon regarding the approval of PTO when an email from the Spring of 2021 shows Bohannon did not wish to receive these requests;

    d. Overt and excessive criticism of Plaintiff's work despite over a decade of exceptional service and an utter lack of issues with Testing;

    e. The denial of Plaintiff's founded requests for additional testing staff to comply with test vendors and NCTA guidelines which were denied;

    f. Removed schedule flexibility in response to Plaintiff's request for accommodations despite the very real new wave of COIVD infections;

g. Denial of remote work to allow a mother to care for her unvaccinated newborn child when appropriate care was not available, making this accommodation a necessity rather than a convenience;

h. Refusing any accommodation for Plaintiff after Plaintiff pursued all options provided by Defendant and/or Defendant's employees, agents, departments, and the like;

i. Offering accommodation to a white employee who raised childcare concerns despite that employee's poor performance and physical presence requirements;

j. Forcing Plaintiff out of her job;

72. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

73. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

74. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

75. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT V
## RETALIATION IN VIOLATION OF IHRA

76.     Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

77.     At all material times, Plaintiff was an employee and Defendant was an employer covered by, and within the meaning of the Illinois Human Rights Act, 775 ILCS 5 et seq.

78.     Defendant's conduct, as alleged in this Complaint, violated the Illinois Human Rights Act, 775 ILCS 5 et seq., which makes it unlawful to retaliate against an employee for engaging in protected activity.

79.     A respondeat superior relationship existed because Defendant's managers and supervisors had the ability to undertake or recommend tangible decisions affecting Plaintiff or the authority to direct Plaintiff's daily work activity as alleged in the statement of facts.

80.     Plaintiff engaged in protected activity by requesting accommodation that was being offered to other employees as well as other activities to be uncovered during the course of discovery.

81.     After Plaintiff engaged in protected activity, Defendant's agents there after took several adverse employment actions against Plaintiff because of that activity as alleged in the statement of facts, subjecting Plaintiff to retaliation for requesting a reasonable accommodation including, but not limited to:

a. Encouraging staff under Plaintiff's supervision to talk ill of her; several of these testing staff employees expressed they were uncomfortable with the nature of their conversations with Bohannon;

b. Informing Plaintiff of a grievance the day before her departure on FMLA parental leave when it was later discovered this issue was relatively minor; Plaintiff was not given an opportunity to respond to the allegation;

c. Blaming Plaintiff for not checking with Bohannon regarding the approval of PTO when an email from the Spring of 2021 shows Bohannon did not wish to receive these requests;

d. Overt and excessive criticism of Plaintiff's work despite over a decade of exceptional service and an utter lack of issues with Testing;

e. The denial of Plaintiff's founded requests for additional testing staff to comply with test vendors and NCTA guidelines which were denied;

f. Removed schedule flexibility in response to Plaintiff's request for accommodations despite the very real new wave of COIVD infections;

g. Denial of remote work to allow a mother to care for her unvaccinated newborn child when appropriate care was not available, making this accommodation a necessity rather than a convenience;

    h.   Refusing any accommodation for Plaintiff after Plaintiff pursued all options provided by Defendant and/or Defendant's employees, agents, departments, and the like;

    i.   Offering accommodation to a white employee who raised childcare concerns despite that employee's poor performance and physical presence requirements;

    j.   Forcing Plaintiff out of her job;

82.    Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

83.    As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

84.    As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

85.    Plaintiff requests relief as described in the Prayer for Relief below.

## <u>COUNT VI</u>
## INTERFERENCE/RETALIATION IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT, 29 U.S. 2601, et seq. ("FMLA")

86.    Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

87.     At all material times, Defendant was an employer and Plaintiff an employee, covered by, and within the meaning of the FMLA.

88.     A respondeat superior relationship existed because Defendant's managers and supervisors had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout her complaint.

89.     Plaintiff worked for Defendant for over a year.

90.     Plaintiff notified Defendant appropriately about the intended use of her FMLA time as "bonding" time for her newborn child.

91.     As a result, Defendant had actual and constructive notice that Plaintiff needed and qualified for FMLA leave.

92.     29 U.S. 2615(a)(1), makes it, "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this title…"

93.     As alleged in the statement of facts, Defendant retaliated against the Plaintiff for her accommodation needs and interfered with her leave by informing Plaintiff of a grievance the day before her departure on FMLA parental leave when it was later discovered this issue was relatively minor; Plaintiff was not given an opportunity to respond to the allegation;

94.    Defendant's unlawful employment practices were done intentionally, with malice, or with reckless indifference to Plaintiff's rights.

95.    As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

96.    As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

97.    Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VII
## DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF IHRA

98.    Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

99.    At all material times, Plaintiff was an employee and Defendant was an employer covered by, and within the meaning of the Illinois Human Rights Act, 775 ILCS 5 et seq.

100.   Defendant's conduct, as alleged in this Complaint, violated the Illinois Human Rights Act, 775 ILCS 5 et seq., which makes it unlawful to discriminate against an employee because of their race or national origin.

101.   A respondeat superior relationship existed because Defendant's managers and supervisors had the ability to undertake or recommend tangible

decisions affecting Plaintiff or the authority to direct Plaintiff's daily work activity as alleged in the statement of facts.

102. Plaintiff's race is African American/Black, and as such is a member of a protected class.

103. Defendant's agents discriminated on the basis of her race, including but not limited to:

a. Encouraging staff under Plaintiff's supervision to talk ill of her; several of these testing staff employees expressed they were uncomfortable with the nature of their conversations with Bohannon;

b. Informing Plaintiff of a grievance the day before her departure on FMLA parental leave when it was later discovered this issue was relatively minor; Plaintiff was not given an opportunity to respond to the allegation;

c. Blaming Plaintiff for not checking with Bohannon regarding the approval of PTO when an email from the Spring of 2021 shows Bohannon did not wish to receive these requests;

d. Overt and excessive criticism of Plaintiff's work despite over a decade of exceptional service and an utter lack of issues with Testing;

e. The denial of Plaintiff's founded requests for additional testing staff to comply with test vendors and NCTA guidelines which were denied;

f.  Removed schedule flexibility in response to Plaintiff's request for accommodations despite the very real new wave of COIVD infections;

g.  Denial of remote work to allow a mother to care for her unvaccinated newborn child when appropriate care was not available, making this accommodation a necessity rather than a convenience;

h.  Refusing any accommodation for Plaintiff after Plaintiff pursued all options provided by Defendant and/or Defendant's employees, agents, departments, and the like;

i.  Offering accommodation to a white employee who raised childcare concerns despite that employee's poor performance and physical presence requirements while denying Plaintiff the same accommodation;

j.  Forcing Plaintiff out of her job;

104.  Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

105.  As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

106.  As a result of those actions and consequent harms, Plaintiff has

suffered such damages in an amount to be proven at trial.

107.  Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT VIII
## DISCRIMINATION ON THE BASIS OF GENDER/SEX IN VIOLATION OF IHRA

108.  Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

109.  At all material times, Plaintiff was an employee and Defendant was an employer covered by, and within the meaning of the Illinois Human Rights Act, 775 ILCS 5 et seq.

110.  Defendant's conduct, as alleged in this Complaint, violated the Illinois Human Rights Act, 775 ILCS 5 et seq., which makes it unlawful to discriminate against an employee on the basis of their gender/sex.

111.  A respondeat superior relationship existed because Defendant's managers and supervisors had the ability to undertake or recommend tangible decisions affecting Plaintiff or the authority to direct Plaintiff's daily work activity as alleged in the statement of facts.

112.  Plaintiff identifies as a woman and as such is a member of a protected class.

113.  Defendant's agents discriminated against Plaintiff on the basis of her gender/sex in multiple ways including, but not limited to:

a. Encouraging staff under Plaintiff's supervision to talk ill of her; several of these testing staff employees expressed they were uncomfortable with the nature of their conversations with Bohannon;

b. Informing Plaintiff of a grievance the day before her departure on FMLA parental leave when it was later discovered this issue was relatively minor; Plaintiff was not given an opportunity to respond to the allegation;

c. Blaming Plaintiff for not checking with Bohannon regarding the approval of PTO when an email from the Spring of 2021 shows Bohannon did not wish to receive these requests;

d. Overt and excessive criticism of Plaintiff's work despite over a decade of exceptional service and an utter lack of issues with Testing;

e. The denial of Plaintiff's founded requests for additional testing staff to comply with test vendors and NCTA guidelines which were denied;

f. Removed schedule flexibility in response to Plaintiff's request for accommodations despite the very real new wave of COIVD infections;

g. Denial of remote work to allow a mother to care for her unvaccinated newborn child when appropriate care was not available, making this accommodation a necessity rather than a convenience;

22

h. Refusing any accommodation for Plaintiff after Plaintiff pursued all options provided by Defendant and/or Defendant's employees, agents, departments, and the like;

i. Forcing Plaintiff out of her job;

114. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

115. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

116. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

117. Plaintiff requests relief as described in the Prayer for Relief below.

## **PRAYER FOR RELEIF**

Plaintiff Carol Byrd requests that this Honorable Court enter judgment against Defendant as follows:

1. Compensatory damages in whatever amount to which Plaintiff is entitled;

2. Exemplary and/or punitive damages in whatever amount which Plaintiff is entitled;

3. An award of lost wages and the value of fringe benefits, past and future;

4. An award of interest, costs, and reasonable attorney fees; and

5. An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated:  March 30, 2023                    Respectfully Submitted,

/s/ Carla D. Aikens
Carla D. Aikens (6296269)
Austen J. Shearouse (P84852)
CARLA D. AIKENS, P.L.C.
*Attorneys for Plaintiff*
615 Griswold Ste. 709
Detroit, MI 48226
carla@aikenslawfirm.com